UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JEREMY DARNELL MORTON,

        Defendant.

_____/

Case no. 1:19-cr-108

Hon. Paul L. Maloney
United States District Judge

### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE, BRIEF IN SUPPORT, AND REQUEST FOR HEARING

Jeremy Darnell Morton, through his counsel Sean R. Tilton, Assistant Federal Public Defender, respectfully requests that the Court suppress all evidence obtained through a search of Mr. Morton's person, cellular phone, and hotel room because the evidence was obtained in violation of Mr. Morton's Fourth Amendment rights. Specifically, Mr. Morton was arrested without probable cause, there was not a warrant to search his cell phone, and an affidavit in support of a search warrant did not establish a nexus between the illegal activity and the items or place to be searched. Defendant requests an evidentiary hearing in this matter.

### Relevant Facts

On September 17, 2015, a team of police officers was surveilling the Quality Inn located at 7265 Caterpillar Ct. SW, Grand Rapids, Michigan. They were investigating alleged homicides that occurred in Muskegon Heights, Michigan. The Quality Inn is located at the intersection of Michigan State Highway 131 and a busy street, 76th Street.

At approximately noon, the officers saw a woman that they thought was Shamarea Salazar leave the Quality Inn.  She was driving a car registered to Jeremy Morton's mother.  The officers requested that a trooper stop Ms. Salazar to determine if she would tell them who was in the room and where "Burns and Fousse" were.  (Attachment 2, Police Report.)[1]  The trooper pulled Ms. Salazar over as she drove northbound on Highway 131.

Prior to the traffic stop being completed, the officers saw someone who was thought to be Mr. Morton leaving the Quality Inn talking on his cell phone.  (Attachment 2, Police Report.)  He walked to a Comfort Inn located at 7644 Caterpillar Ct. SW, Grand Rapids, Michigan.  During the time of the stop, the officers were told that there was a warrant for the search of the hotel room and the vehicle driven by Ms. Salazar.

Once there were enough officers present so that they felt safe, the team of officers descended on the Comfort Inn looking for Mr. Morton.  (Attachment 2, Police Report.)  The team of police officers intended to interview Mr. Morton and request that he voluntarily accompany them to a police station in Muskegon, Michigan.  (ECF No. 11, Transcript (Case 1:19-mj-00128-RSK), PageID.38-39, Page 23-24.)  There was no arrest warrant issued.  *Id.*  When the police encountered Mr. Morton in the Comfort Inn, he was searched, handcuffed, and placed in the back of a police car.  The police drove him handcuffed to the Quality Inn.  At the Quality Inn, he remained handcuffed in the back of the police car.  After Mr. Morton had been arrested and transported from the Comfort Inn, an officer found heroin in a public bathroom.

---

[1] The affidavit for the search warrant does not identify Burns.

The police had obtained a search warrant for room 106 at the Quality Inn. (Attachment 1, Affidavit, Search Warrant, and Return.) The search warrant allowed for the search of room 106 and all vehicles located at 7625 Caterpillar Court associated with, registered to, or occupied by the occupants or residents of room 106. The warrant allowed to seize, secure, tabulate, and make return according to law the following property and things: firearms, including but not limited to handguns, ammunition, proof of residency, cellular phones and the contents of those cellular phones.

Pursuant to that search warrant for the hotel room, they searched Mr. Morton again and seized his cellular phone and cash. (Attachment 1, Affidavit, Search Warrant, and Return.) Later, pursuant to the same search warrant, the police searched Mr. Morton's phone.

**Affidavit for Search Warrant**

The affidavit in support of the search warrant includes two affidavits; the affidavit ("Affidavit") signed by Detective/Lieutenant Mike Anderson and an attached affidavit that it sought to incorporate and described as "Exhibit A." The Affidavit states that the affiant was assisting in the investigation of three homicides that took place on August 30, 2015; September 4, 2015; and September 5, 2015; in Muskegon Heights, Michigan. The affiant in Exhibit A was investigating a homicide that took place on August 30, 2015, in the 600 block of Hovey Street, East Manor, in Muskegon Heights, Michigan. The Affidavit does not specifically state that it is investigating the same homicide that is being investigated in Exhibit A.

**Exhibit A**

Exhibit A is an affidavit for a search warrant of XXXX 7th Street, Muskegon, Michigan, dated September 17, 2015. Exhibit A contains an "/s/" on the signature lines for

3

the affiant, prosecuting attorney, and district court judge, but is not signed by those parties. Exhibit A does not include a search warrant.

The affiant states that Shavonna Stinson said that Kassandre Brown and Da'Sha Fields got into an altercation at the Port City Tavern. "After the altercation with Stinson, Brown called Jeremy Morton who met with Stinson and Brown at the Dog House Saloon." (Attachment 1, Affidavit, Search Warrant, and Return.) Ms. Stinson identified Darnell Byrd and Josiah Fousse as arriving with Morton to the Dog House Saloon, and Morton was driving a red Mustang. Affiant is aware that Byrd was shot and killed in Muskegon Heights on September 5, 2015. From the Dog House, Stinson, Brown, and Brittany Flowers drove through East Park Manor with Morton following. After driving through East Park Manor, Stinson advised the two vehicles stopped outside the projects and Byrd and Fousse exited the red Mustang with Byrd carrying a firearm and Morton advised Stinson and Brown to get out of the area. Shortly after leaving, Stinson heard gunshots. Affiant is aware that the red Mustang is observed on video from East Park Manor, and the shooting takes place shortly thereafter. Stinson further indicated after the shooting, Stinson met back up with Morton, and Morton advised Stinson that Morton had just dropped off Byrd at the hospital because Byrd had been shot, and Morton gave Mike White a gun to hold that had been used in the shooting.

**Affidavit**

The affiant states that he assisted in the execution of the attached search warrant and that Brittany Kelsey was located in the residence. The affiant does not state anything else about the execution of the search warrant associated with Exhibit A and anything that was seized or discovered during its execution.

4

The affidavit goes on to state that Ms. Kelsey testified on September 11, 2015, that she was staying in a motel over the Labor Day weekend in the Grand Rapids area. Ms. Kelsey could not recall the name of the motel. Ms. Kelsey indicated that Jeremy Morton was at the motel and had his own room. She also stated that he was at the motel with Shamarea Salazar, whom Ms. Kelsey identified as Mr. Morton's girlfriend.

The affidavit states that during the investigation of three homicides that a warrant was issued for Josiah Fousse. The affidavit states that over the previous 72 hours, Mr. Fousse's cellular phone has been located in "proximity" to 7625 Caterpillar Court. The affidavit does not define proximity or how often it "pinged" in that area.

The affidavit goes on to state that Ms. Salazar was checked into the Quality Inn through September 17, 2015. The affiant states that he personally observed the premises. Affiant also states that Trooper Thompson made contact with motel staff who indicated that cleaning staff knocked on the door to 106 advising that checkout time was approaching. A male voice advised someone would be down to add additional nights. Shortly thereafter, a black/female, identified as Salazar, came to the office and paid for additional nights at the motel.

**Argument**

The Fourth Amendment protects people from unreasonable searches and seizures. U.S. Const. amend. IV. To that end, the Fourth Amendment requires that a search warrant may be issued only upon a finding of probable cause. U.S. Const. amend. IV. To establish probable cause, the affidavit "must describe the relationship between the alleged criminal conduct, the property to be seized and the place to be searched." *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998), cert. denied, 526 U.S. 1077 (1999). The affidavit must indicate

5

that the evidence of illegal activity will be found in a "particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). The "critical element in a reasonable search is not that the owner of the property is suspected of crime, but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *United States v. Pinson*, 321 F.3d 558, 564 (6th Cir.), cert. denied, 540 U.S. 912 (2003) (*quoting Zurcher v. Standford Daily*, 436 U.S. 547, 556 (1978)). In other words, the affidavit must establish a nexus between the place to be searched and the evidence sought. *Carpenter*, 360 F.3d at 594.

The duty of the magistrate judge "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S. Ct. 2317 (1983). The task of the reviewing court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id*.

Here, (1) there was no probable cause to arrest Mr. Morton at the Comfort Inn; (2) Mr. Morton could not be detained or searched pursuant to the search warrant because he was not in the Quality Inn when he was arrested by the police; and (3) Mr. Morton's phone could not be searched pursuant to the search warrant.

### I. The officers violated Mr. Morton's rights when they arrested him at the Comfort Inn

The officers violated the Fourth Amendment when they arrested Mr. Morton at the Comfort Inn. There was not an arrest warrant that was issued. At Mr. Morton's preliminary hearing, an officer testified that in contacting Mr. Morton, they intended to attempt a

consensual interview and ask him to return to a police department in Muskegon. (ECF No. 11, Transcript (Case 1:19-mj-00128-RSK), PageID.38-39, Page 23-24.) Another officer stated that they wanted to serve Mr. Morton with the search warrant for the Quality Inn. (Attachment 2, Police Report.) Instead, a team of officers entered the Comfort Inn, conducted a weapons search and, finding none, still detained him. He was handcuffed and placed in the back of a police car and driven to the Quality Inn. At this time, he was not free to leave and was clearly arrested. *United States v. Perez,* 629 Fed.Appx. 699, 706 (6th Cir. 2015) (defendant handcuffed in back of police car was in custody).

The officer may arrest suspect without arrest warrant if there is probable cause to believe that a suspect has violated or is violating the law. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (*citing Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631 (1979)). Here, officers arrested him, handcuffed him, and placed him in a police car. There was no probable cause to arrest him. The cell phone and U.S. currency that were discovered on his person should be suppressed.

> **II.     Mr. Morton's cell phone and U.S. currency could not be seized pursuant to a warrant to search room 106 in Quality Inn because Mr. Morton was not in the room when the search warrant was executed**

The search warrant authorized officers to seize cellular phones and the contents of those cell phones located in room 106 of the Quality Inn. The police exceeded the scope of the warrant when they detained Mr. Morton at the Comfort Inn, and drove him to the Quality Inn, where they seized his cell phone. The warrant did not authorize the seizure of U.S. currency.

Mr. Morton was not at the Quality Inn when the officers encountered him. He had left the Quality Inn prior to the execution of the search warrant. The officers watched him walk

past a gas station, into a hotel, and followed him a short time later. After arresting him, they drove him back to the Quality Inn, where he remained outside of the Quality Inn and was handcuffed inside a police car. He was then searched again and his cell phone was taken. The search warrant return for the Quality Inn states that an "LG Phone Blk" and "Quantity of U.S. Currency" was seized from his person. (Attachment 1, Affidavit, Search Warrant, and Return.)

The officers executing search warrant may detain occupants present at the place to be searched. *Michigan v. Summers*, 452 U.S. 692 (1981). However, the Supreme Court has clarified that the government's authority to detain occupants is spatially constrained to the "immediate vicinity of the premises to be searched." *Bailey v. United States*, 568 U.S. 186, 201 (2013). In *Summers*, the Court highlighted three main interests for justifying the detention of occupants who are on the premises during the execution of a search warrant: "officer safety, facilitating the completion of the search, and preventing flight," the rationale being that an occupant in the immediate vicinity of a premises to be searched could easily re-enter the premises and jeopardize officer safety and evidence preservation. *Bailey*, 568 U.S. at 194 (citing *Summers*, 452 U.S. at 702-03). When occupants are not on the premises to be searched, the government's detention of an occupant does not further the interests laid out in *Summers*, but only creates a greater level of intrusiveness. *Id.* at 194-200, 201 ("The *Summers* exception is appropriately predicated only on law enforcement's interest in carrying out the search unimpeded by violence or other disruptions."). Therefore, detentions incident to search warrants are justified only if they occur with the "immediate vicinity" of the premises to be searched. *Id.*

Courts look to a number of factors in determining whether an occupant is within the immediate vicinity, such as the lawful limits of the search premises, whether the occupant was

within the line of sight of the dwelling, the ease of reentry from the occupant's location, and other relevant factors. *Bailey*, 568 U.S. at 201. In *Summers*, the Court found that it was appropriate to detain a resident walking down the front on the porch of the home to be searched. In *Bailey*, the Court found it inappropriate to detain a person one-mile away from the residence to be searched. The court in our district recently held that two men standing on the other side of the street, two houses down from the search premises, were outside the "immediate vicinity" of the search premises. *United States v. McElrath*, 327 F.Supp.3d 1057, 1061 (W.D. Mich. 2018) (Gordon J. Quist J); *see also United States v. Sherrill*, 27 F.3d 344, 346 (8th Cir. 1994) (finding that an occupant who exited the premises and was stopped one block away from his home was outside the immediate vicinity of the search premises). Justice Scalia, in his *Bailey* concurrence, decried the "smorgasbord of law enforcement interests" that the court of appeals in *Bailey* cited in light of *Summers*:

> The *Summers* exception is appropriately predicated *only* on law enforcement's interest in carrying out the search unimpeded by violence or other disruptions. The common denominator of the few Fourth Amendment doctrines permitting seizures based on less than probable cause is the presence of some governmental interest independent of the ordinary interest in investigating crime and apprehending suspects. Preventing flight is not a special governmental interest—it is indistinguishable from the ordinary interest in apprehending suspects.

*Bailey*, 568 U.S. at 205 (Scalia, J., concurring) (emphasis in original) (internal quotation marks and citation omitted). *McElrath*, 327 F. Supp. 3d at 1062.

The factors in *Bailey* do not justify Mr. Morton's detention, search, and the seizure of the phone and currency. Here, the search warrant described premises to be searched as a room 106 in the Quality Inn hotel. Not only Mr. Morton was not in room 106, but he was not even on the property of the Quality Inn. Mr. Morton was such a distance from the Quality Inn that

9

the police had to drive him back, where they sought to bring him within the scope of the search warrant. Additionally, the officers could have easily prevented entry to the Quality Inn by Mr. Morton. To walk to the Quality Inn, Mr. Morton would have had to cross the parking of the Comfort Inn, a busy street, a large parcel of land where the gas station is located, and the parking lot of the Quality Inn. He would then have enter the building and specifically room 106. The officers were able to surveil Mr. Morton leaving the Quality Inn.

Mr. Morton had left the property of the Quality Inn prior to the search warrant being executed. None of the justification, evidence destruction, officer safety, and flight are implicated here, where a suspect is a distance away, on another property. Thus, Mr. Morton was outside the "immediate vicinity" of the room 106 in Quality Inn. Therefore, his phone and the U.S. currency could not be seized pursuant to a warrant authorizing seizure of cell phones found in room 106 in Quality Inn motel and should be suppressed.

### III. The warrantless search of Mr. Morton's cell phone violates Fourth Amendment

The Fourth Amendment protects citizens against unreasonable searches and seizures. Reasonableness generally requires obtaining a warrant. *Riley v. California*, 573 U.S. 373, 382, 134 S. Ct. 2473, 2482 (2014). "Such a warrant ensures that the inferences to support a search are 'drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Id*. (*quoting Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct. 367 (1948)). The Supreme Court held that warrant is required to search suspect's cell phone. *Riley v. California*, 573 U.S. 373, 134 S. Ct. 2473, 2485 (2014).

Here, the officers seized and searched Mr. Morton's cell phone. The officers did not have a warrant to search his phone. The warrant issued for room 106 was limited in its scope.

It authorized officers "to seize, secure, tabulate and make return according to law the following property and things: Firearms, including but not limited to handguns, ammunition, proof of residency, cellular phones and the content of those cellular phones." (Attachment 1, Affidavit, Search Warrant, and Return, at 1). Thus, the warrant authorized seizure of the cell phones but not the search. Therefore, there was no warrant that authorized search of Mr. Morton's phone, and search of his phone violated the Fourth Amendment. The contents of the cell phone should be suppressed.

### IV. The affidavit does not establish probable cause

Under the Fourth Amendment, a search warrant may be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the . . . things to be seized." U.S. Const. amend. IV. In determining whether probable cause exists, a magistrate judge issuing a warrant must find that "given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317 (1983). This requires "a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*) (internal quotation omitted). The "critical element in a reasonable search is not that the owner of the property is suspected of crime, but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *United States v. Pinson*, 321 F.3d 558, 564 (6th Cir.), cert. denied, 540 U.S. 912 (2003) (*quoting Zurcher v. Standford Daily*, 436 U.S. 547, 556 (1978)). In other words, the affidavit must establish a nexus between the place to be searched and the evidence sought. *Carpenter*, 360 F.3d at 594.

11

The connection between the place or item to be searched and the evidence of criminal activity "must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (*citing United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004)). "The review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009).

Here, the affidavit does not provide a sufficient nexus between alleged crime and room 106 in Quality Inn. There is no allegation that any illegal activity was observed in the room. The affidavit does not sufficiently connect Mr. Morton to room 106 in the Quality Inn. The affidavit states that Mr. Morton and Ms. Salazar stayed together in an unknown hotel in the Grand Rapids area approximately 11 days earlier, when a witness by the name of Brittany Kelsey stayed in a hotel that she could not remember and stated that Ms. Salazar and Mr. Morton were in another room. It states that Ms. Salazar was registered to a room in the Quality Inn on September 17 and that there was a "male voice" in the room. The only other information stated in the affidavit to establish nexus is that Josiah Fousse, who had warrant for his arrest for assault with intent to commit murder for the August 30, 2015, murder, had his phone "ping" "in proximity" of the Quality Inn within 72 hours of the drafting of the affidavit.

This is insufficient evidence to connect Mr. Morton to room 106 at Quality Inn. The only information about Mr. Morton and Ms. Salazar ever staying together happened on a holiday weekend 11 days prior to the affidavit, when they were alleged to be in a dating relationship. The person providing the information could not even remember the name of the hotel when she testified on September 11, less than one week after she stayed at the hotel.

There is no information to suggest that Ms. Salazar and Mr. Morton followed a pattern of staying together or had been staying together for the intervening 10-11 days. Nor does information that another murder suspect, Josiah Fousse's phone pinged "in proximity," provide necessary link between alleged crimes and room 106. There is not any allegation that Josiah Fousse stayed in the Quality Inn, and no allegation that he was seen in the hotel. His phone pinged "in proximity" to the hotel, but that is an area that has many other businesses, hotels, residences, and adjoins a busy 4-6 lane highway. The affidavit does not define proximity or the radius of a possible ping. The affidavit also does not say if it was a single ping or many pings. It was speculation that Mr. Morton or Josiah Fousse were staying in room 106 in Quality Inn.

In sum, the affidavit does not provide the required nexus that evidence of a suspected crime would be found in place to be searched. All of the seized evidence as a result of the search warrant should be suppressed.

Further, *Leon* good-faith does not apply. Under *Leon*, when an affidavit supporting a search warrant fails to establish probable cause, evidence will still not be excluded if police officers relied on a warrant in good faith. *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984). There are four exceptions to the good-faith reliance on a warrant, one of which is when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (*citing Leon*, 468 U.S. at 914–923, 104 S. Ct. 3405). "Whether an objectively reasonable officer would have recognized that an affidavit was so lacking in indicia of probable cause as to preclude good faith reliance on the warrant's issuance can be measured only by what is in that

13

affidavit" and does not include information known to the officer but not disclosed in the affidavit. *Laughton*, 409 F.3d at 751–52. To support the officer's good-faith reliance on the warrant, an affidavit must contain facts demonstrating "a minimally sufficient nexus between the illegal activity and the place to be searched ... even if the information provided was not enough to establish probable cause." *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004).

Here, the affidavit does not provide even minimal information linking alleged crimes to room 106 in Quality Inn. The affidavit does not stated that Mr. Morton was ever seen there or that he was a registered guest there. The fact that he stayed in some unidentified hotel with Shamarea Salazar—eleven days earlier—does not establish that he is staying with her at the Quality Inn, especially since the affidavit states that he sleeps at a house at XXXX 7th Street. And the fact that another suspect's phone pinged "in proximity," is insufficient especially since this is densely populated area with many commercial and residential establishments.

In sum, the affidavit does not provide the required nexus that evidence of a suspected crime would be found in place to be searched and no officer could rely on it in good faith. Therefore, all evidence found during the search of room 106 in Quality Inn should be suppressed.

**Conclusion**

Jeremy Morton respectfully requests that the Court suppress all evidence obtained through the search of Mr. Morton's person on September 17, 2015, including his cell phone and U.S. currency and all of the evidence discovered pursuant to the search warrant.

                                    Respectfully submitted,

                                    SHARON A. TUREK
                                    Federal Public Defender

Dated:  June 3, 2019            /s/ Sean R. Tilton
                                    SEAN R. TILTON
                                    Assistant Federal Public Defender
                                    Office of the Federal Public Defender
                                    50 Louis, NW, Suite 300
                                    Grand Rapids, Michigan  49503
                                    (616) 742-7420

                                    /s/ Jasna Tosic
                                    JASNA TOSIC
                                    Research & Writing Specialist