UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

       Plaintiff,                          Case No. 1:19-cr-108

v.                                            Hon. Paul L. Maloney
                                                United States District Judge

JEREMY DARNELL MORTON,

       Defendant.
_____ /

**DEFENDANT'S SENTENCING MEMORANDUM AND
BRIEF IN SUPPORT OF MOTION FOR DOWNWARD VARIANCE**

On December 9, 2019, Jeremy Darnell Morton will stand before this Honorable Court to be sentenced for possession of heroin with intent to distribute. A Presentence Investigation Report (PSR) has been completed and published to the parties. (ECF No. 52, PSR.) Mr. Morton objects to his categorization as a career offender in paragraphs 28, 44, 49, 55, and 99 of the PSR. He withdraws his objection to paragraph 106.

Overall, as the Court is aware, the principle and basic mandate of 18 U.S.C. § 3553(a) requires this Honorable Court to impose a sentence "sufficient, but not greater than necessary." In *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006), the Court held that after *United States v. Booker*, 543 U.S. 220 (2005), a judge must impose the lowest sentence that is "minimally sufficient" to meet those goals whether that sentence is probation, time served, a mandatory minimum sentence, the statutory maximum, or somewhere in between.

**18 U.S.C. § 3553(a) Factors**

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant**

Jeremy Darnell is 32 years old.  He has been incarcerated since September 17, 2015. He was convicted at trial of possession of heroin with intent to distribute.  He is being held accountable for 10.603 grams of heroin.  (ECF No. 52, PSR ¶ 17.)   He has participated in the presentence process and answered the PSR writer's questions, but did not discuss the offense of conviction.

Mr. Morton has the support of family members and friends.  Eight letters of support were submitted on his behalf.  The letters state that Mr. Morton was raised in a difficult environment.  The PSR notes that Mr. Morton's father left the state soon after he was born. (ECF No. 52, PSR ¶¶ 63-65.)  The letters also state that Mr. Morton is a loving father, son, and sibling.

Mr. Morton has three children, ranging from 4 to 17 years old.  (ECF No. 52, PSR ¶¶ 74-75.)   He has regular contact with his two oldest children.  He has never met his youngest daughter in-person, because he has been incarcerated since before her birth. Mr. Morton wants to be present in his children's lives.  He grew up without his father being physically present and Mr. Morton had hoped for something different for his children.  He is requesting a recommendation for parenting classes.

Mr. Morton wants to find employment upon release.  While incarcerated, he is interested in developing vocational skills.  He is interested in additional training in HVAC and the culinary arts.  He is also interested in business classes.  Upon his release, Mr.

Morton hopes to find work in HVAC or the culinary arts. In the long-term, he wants to own his own business, Specifically, he hopes to own real estate. Mr. Morton remains optimistic about his future.

> **(2) The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Mr. Morton is facing a new federal sentence. He has also been charged with violating his supervised release. Mr. Morton has been incarcerated for the last four years and has evaluated the direction of his life. He does not want to spend his life incarcerated. He has identified personal and professional motivations for staying out of prison and remaining law abiding. Mr. Morton plans to be law abiding upon release.

**(3) The kinds of sentences available**

There is not a statutory minimum in this case. Consequently, the Court has wide discretion in sentencing Mr. Morton.

**(4) The kinds of sentence and the sentencing range established**

The PSR has scored the advisory sentencing guideline range as 262 to 327 months, based upon an adjusted offense level of 34 and criminal history category of VI. Mr. Morton objects to his categorization as a career offender. He believes that his advisory guideline range should be 33 to 41 months, based upon an offense level of 14 and criminal history category of V.

### a. Mr. Morton objects to his classification as a career offender in paragraphs 28, 44, 49, 55, and 99 of the PSR.

Mr. Morton objects to his classification as a career offender in paragraphs 28, 44, 49, 55, and 99 of the PSR.  He objects to the classifications of his prior convictions in paragraph 44 (Michigan delivery/manufacturing less than 50 grams of cocaine under Mich. Comp. Law § 333.7401) and paragraph 49 (distribution of 5 grams or more of cocaine base under 21 U.S.C. § 841) as controlled substances offenses.  If the Court sustains Mr. Morton's objection to either predicate offense, he would not be categorized as a career offender.  Mr. Morton's objections are pursuant to the Sixth Circuit's holding in *United States v. Havis*, 927 F.3d 382, 383 (6th Cir.), reconsideration denied, 929 F.3d 317 (6th Cir. 2019).  Mr. Morton is not a career offender and his offense level should be 14 (ECF No. 52, PSR ¶ 22) and criminal history category V. (ECF No. 52, PSR ¶ 54).  U.S.S.G. § 2D1.1(C)(13).

Under the Sixth Circuit's unanimous, *en banc* decision in *Havis*, 927 F.3d 382, 383, delivery of a controlled substance under Michigan law and distribution of 5 grams or more of cocaine base under federal law are not controlled substance offenses.  *Havis's* major holding is that attempt crimes do not qualify as controlled substance offenses under the guidelines.  Specifically, the Sixth Circuit held that Application Note 1 to § 4B1.2(b)—which purports to expand the definition of a "controlled substance offense"—is an unconstitutional use of the Sentencing Commission's authority and invalid.

Under U.S.S.G. § 4B1.2(b), "[t]he term 'controlled substance offense' means an offense…that prohibits the manufacture, import, export, distribution, or dispensing of a

4

controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." Application Note 1 to U.S.S.G. § 4B1.2(b) expands this definition to "include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2 comment. n. 1. However, the Sixth Circuit, ruling *en banc*, held that this Application Note added to, rather than interpreted § 4B1.2, and is thus invalid. *Havis*, 927 F.3d at 386-87.

Because the Sentencing Commission has "both quasi-legislative and quasi-judicial power," it is constitutional only because of two constraints. *Id*. at 385-86. First, Congress reviews each guideline before it takes effect. *Id*. Second, the guidelines are subject to the notice and comment requirements of the Administrative Procedure Act. *Id*. "These two constraints—congressional review and notice and comment—stand to safeguard the Commission from uniting legislative and judicial authority in violation of the separation of powers." *Id*.

However, the commentary to the guidelines is not subject to either constraint. Accordingly, the commentary is constitutional only because it "has no independent legal force—it serves only to interpret the Guidelines' text, not to replace or modify it." *Id*. at 386.

Applying these principles to § 4B1.2(b), the Sixth Circuit held that Application Note 1 impermissibly expanded the definition of "controlled substance offense" by including attempts: "To make attempt crimes a part of § 4B1.2(b), the Commission did not interpret a term in the guideline itself—no term in § 4B1.2(b) would bear that construction. Rather,

5

the Commission used Application Note 1 to add an offense not listed in the guideline." *Id*. Thus, Application Note 1 has no force, and the text of § 4B1.2(b) is determinative.

Applying this conclusion, the Sixth Circuit held that the defendant's conviction for sale/delivery of cocaine under Tennessee law was not a controlled substance offense. This was because Tennessee law defines "delivery" to mean "the actual, constructive, or attempted transfer from one person to another of a controlled substance." *Havis*, 927 F.3d at 384 (citing Tenn. Code Ann. § 39-17-402(6)). Accordingly, under the categorical approach, the court "look[ed] to the least of the acts criminalized by the elements of that statute" to see if they fell within the guidelines' definition. *Id*. (emphasis in original). Because the defendant could have been convicted of delivery with a mere attempt to deliver, his conviction for delivery was the categorical equivalent of a conviction for attempted delivery. Additionally, the *Shepard* "documents did not specify whether his conviction was for sale, delivery, or both." *Id*. Thus, the defendant's conviction for sale/delivery of cocaine was not a controlled substance offense under the guidelines.

Like Tennessee, Michigan and federal law defines deliveries to include attempted deliveries. The definition of "delivery" for Mich. Comp. Law § 333.7401 includes the "attempted transfer from 1 person to another of a controlled substance . . . ." Mich. Comp. Law § 333.7105(1). Thus, under the categorical approach, Michigan delivery constitutes attempted delivery. Mr. Morton was previously convicted under 21 U.S.C. § 841. Under federal law, the term "distribute" "means to deliver (other than by administering or dispensing) a controlled substance. . ." 21 U.S.C. § 802(11). The federal definition of "delivery" means "the actual, constructive, or attempted transfer of a controlled substance.

6

. ." 21 U.S.C. § 802(8). Accordingly, Mr. Morton's convictions are not "controlled substance offenses" under the guidelines and he should not be scored as a career offender.

### b. The government's arguments ignore federal and Michigan law

Counsel anticipates that the government will urge this Court to adopt the theory presented in Judge Sutton's opinion concurring in the denial of rehearing in *United States v. Havis,* 929 F.3d 317 (6th Cir. 2019).[1] Judge Sutton's concurrence argues that the relief in *Havis* only applies to attempt under § 846, however, that distinction is not stated in the underlying decision and the concurrence is not consistent with federal or state law. Furthermore, even if the Court were to adopt the concurrence for the proposition that *Havis* only applies to attempt under § 846, since that offense is subsumed within § 841, the categorical approach requires that this Court find that neither is a controlled substance offense. *See Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013), *Costo v. United States*, 904 F.2d 344, 348 (6th Cir. 1990).

After *Havis*, it is undisputed that attempt crimes are not "controlled substance offenses" under the guidelines. Likewise, it is undisputed that if federal or Michigan

---

[1] *Havis* has a complicated procedural history. Initially, the panel affirmed the defendant's sentence. Although all three judges agreed with the defendant's arguments, two of the judges believed that the Sixth Circuit's prior precedent required them to affirm the sentence. *United States v. Havis*, 907 F.3d 439, 442–44 (6th Cir. 2018). The defendant then moved for *en banc* rehearing, which the court granted. The court overturned its prior decision, issuing the unanimous, per curiam opinion that the defendant relies on. *United States v. Havis*, 927 F.3d 382, 386–87 (6th Cir. 2019) (*en banc*) (per curiam). Subsequently, the government moved for a second rehearing. The court denied the government's motion, and Judge Sutton filed his opinion concurring in the denial of rehearing. *United States v. Havis*, 929 F.3d 317 (6th Cir. 2019). No other judge joined in Judge Sutton's opinion and it is not binding on this Court.

delivery criminalizes attempted delivery, a conviction for federal or Michigan delivery is also not a controlled substance offense. However, despite the fact that federal law and Michigan defines delivery to include "attempted transfer," the government now argues that Michigan and federal delivery does not include attempted delivery.

### i. *Havis* applies to 21 U.S.C. § 841

The government bases its argument on a purported "difference between the offense of distribution of drugs by attempting to transfer drugs and the separate offense of attempted distribution." Judge Sutton's concurrence states that "when someone attempts to transfer drugs in the ordinary sense, he has distributed drugs and violated § 841; but when someone attempts to distribute drugs in the legal sense, he has attempted only to distribute (or attempted to attempt to transfer) drugs and violated § 846. A conviction for distributing drugs is not, then, a conviction for attempting crime." In Judge Sutton's words, these "two constitute distinct offenses, one greater and one lesser, one complete and one attempted." *Havis*, 929 F.3d at 319. Judge Sutton's concurrence argues that this distinction exists in federal law, and notes that it could apply to Tennessee law as well. *Id.* at 320.

Mr. Morton disagrees that any such distinction exists in federal law. Sections 841 and 846 do not conflict and a plain reading of the statutes supports their consistency.

In *Costo v. United States*, 904 F.2d 344, 348 (6th Cir. 1990), the Sixth Circuit held that consecutive sentences under §§ 841 and 846 for the same conduct violated double jeopardy:

> Actual distribution under section 841(a)(1) and attempted distribution under section 846 do not each require proof of an additional element which the other does not. Attempted distribution requires: (1) an intent to engage in criminal conduct and (2)

8

>an overt act constituting a substantial motion towards commission of the substantive offense. *United States v. Williams,* 704 F.2d 315, 321 (6th Cir.), *cert. denied,* 464 U.S. 991, 104 S. Ct. 481, 78 L. Ed.2d 679 (1983). An act of completed distribution necessarily subsumes all the elements of an attempted distribution. "As is invariably true of a greater and lesser included offense, the lesser offense ... requires no proof beyond that which is required for conviction of the greater...." *Brown v. Ohio,* 432 U.S. 161, 168, 97 S. Ct. 2221, 2226, 53 L. Ed.2d 187 (1977). Therefore, because attempted distribution does not involve proof of a fact which actual distribution does not, the imposition of consecutive sentences for both distribution and attempted distribution violates the double jeopardy clause. *Blockburger,* 284 U.S. at 304, 52 S. Ct. at 182.

That attempt under § 846 is subsumed within § 841 means that attempt, while it may be lesser, it is not a distinct offense. In *Costo,* the Sixth Circuit distinguished conspiracy and attempt under § 846, holding that the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, but "the same is not true of attempt." *Costo,* 904 F.2d at 348, citing *Pereira v. United States,* 347 U.S. 1, 11 (1953). If attempt were a distinct offense, as argued in Judge Sutton's concurrence, a defendant could be sentenced consecutively for the same conduct.

The categorical approach requires courts to assume that a conviction is based upon the least of the acts criminalized. *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013). Since attempt under § 846 is subsumed with § 841, the least of the acts criminalized in § 846 is attempted distribution of a controlled substance. *See Costo*, 904 F.2d 348. Pursuant to *Moncrieffe,* federal distribution of controlled substances is then categorically attempted distribution. Because it is undisputed that attempts are not controlled substance offenses under the guidelines, convictions for distribution of a controlled substance under 21 U.S.C. § 841 are likewise not controlled substance offenses.

9

The Seventh Circuit has explicitly rejected the idea that §§ 841 and 846 are distinct. In *United States v. McKenzie,* 743 Fed. Appx. 1 (7th Cir. 2018), the Seventh Circuit was asked to read "attempted transfer" out of the Controlled Substance Act's definition of "deliver." The defendant noted that an "attempt to distribute" is criminalized by § 846, the general "attempt" statute, yet he was charged with "distribution" under § 841, not "attempted distribution" under § 846. The court stated that the argument might have traction if the two statutes conflicted. Instead, the court held that the plain text of the statute governs, and it defines "distribution" as "delivery" and "delivery" as "attempted transfer. Accordingly, the text of the Act defeats defendant's argument." *Id.* Judge Sutton's concurrence is inconsistent with *McKenzie* and does not follow the plain text of the statute. Mr. Morton believes that this Court should find *McKenzie* persuasive and consistent with *Costo.* Mr. Morton's prior federal conviction is not a controlled substance offense.

### *ii. Havis* applies to Mich. Comp. Law § 333.7401

The analysis of his conviction under Mich. Comp. Law § 333.7401 is similar. Under the categorical approach, federal courts are bound by state courts' interpretation of state statutes. *Johnson v. United States*, 559 U.S. 133, 138 (2010). And Michigan courts have rejected interpreting Michigan law according to Judge Sutton's theory.

Instead, Michigan courts have consistently held that attempted delivery is not a separate crime, but rather a means to commit delivery under Michigan law. For example, in *People v. Wright*, 74 Mich. App. 297, 301 (1977), the defendant was charged with delivery of heroin. At trial, he asked the court to also instruct the jury on attempted delivery of heroin. *Id.* The trial court declined to do so, and the Court of Appeals of Michigan

10

affirmed. The court held that "there can be no crime of 'attempted delivery of heroin' in Michigan." *Id.* Rather, because the Michigan Controlled Substances Act "defines 'delivery' as 'the actual, constructive or attempted transfer from 1 person to another of a controlled substance,'" the legislature "merge[d] attempt with the completed offense." *Id.*

Likewise, in *Wayne Cty. Prosecutor v. Detroit Recorder's Court Judge*, 177 Mich. App. 762, 764 (1989), the court held "under the controlled substances act, there is no such offense as 'attempted delivery of cocaine.' Any attempt is subsumed under the crime of delivery itself." Similarly, in *People v. Alexander*, 188 Mich. App. 96, 99 (1991), the court held "an attempt is subsumed under the crime of delivery itself, and there is no separate offense of attempted delivery of cocaine."

Thus, under Michigan law, attempted delivery and delivery are not two "distinct offenses, one greater and one lesser, one complete and one attempted." *Havis,* 929 F.3d 317 (Sutton, J., concurring). Rather, attempted delivery is one means of committing delivery.

The categorical approach requires courts to assume that a conviction is based upon the least of the acts criminalized. *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013). Thus, Michigan delivery of controlled substances is categorically attempted delivery of a controlled substance. Because it is undisputed that attempts are not controlled substance offenses under the guidelines, convictions for delivery of a controlled substance under Mich. Comp. Laws § 333.7401 are likewise not controlled substance offenses.

Counsel also anticipates that the government will argue that *People v. Wright* and its progeny are no longer good law. Specifically, the government has previously argued

11

that the Michigan legislature overturned this line of cases by enacting Mich. Comp. Laws § 333.7407a, which provides a harsher penalty for attempts to violate controlled substance offenses.[2]  However, no Michigan law supports this argument.

First, this argument lacks common sense.  *Wright* held that it was the definition of "'delivery' as 'the actual, constructive or attempted transfer from 1 person to another of a controlled substance,'" that "merge[d] attempt with the completed offense." 74 Mich. App. 301.  This definition has not changed; Michigan still defines delivery as "the actual, constructive, or attempted transfer from 1 person to another of a controlled substance." Mich. Comp. Laws § 333.7105(a).  Thus, *Wright*'s holding that this definition subsumes attempt into a complete delivery remains unchanged.

Second, the government failed to cite any Michigan case supporting its theory, and counsel has found none that does.  Mich. Comp. Laws § 333.7407a was enacted in 1994. 1994 Mich. Legis. Serv. P.A. 220 (H.B. 4237).  In the 25 years since it has been enacted, no Michigan court has held that it changed the law on attempted deliveries so that they are no longer subsumed into completed deliveries.

Indeed, Michigan courts continue to instruct juries that delivery subsumes the offense of attempted delivery. (*See* Attachment A, M. Crim. J.I. 12.2, Unlawful Delivery of a Controlled Substance).  The Michigan Model Criminal Jury Instruction for delivery of

---

[2] Under Michigan's general attempt statute, the punishment for an attempted crime is lower than the punishment for the completed crime.  *See* Mich. Comp. Laws § 750.92.  Under Mich. Comp. Laws § 333.7407a, attempts to commit offenses under Mich. Comp. Laws Ch. 333, Art. 7, Pt. 74 (i.e. controlled substance offenses), are punished with the same penalties as the completed offenses.

12

a controlled substance—most recently amended in 2018—instructs the jury that a legal attempt is sufficient for a delivery conviction; it allows the jury to convict the defendant if he intended to deliver a controlled substance and took some action towards this goal. *Id.* And the notes for this instruction state "Because the statutory definition of delivery includes actual, constructive, or attempted transfer of a substance, attempted delivery is not a lesser included offense. MCL 333.7105(1)." *Id.*

Thus, the government's prior argument that Mich. Comp. Laws § 333.7407a overturns Michigan's case law on attempted deliveries lacks any support under Michigan law. Michigan courts continue to instruct juries that they may convict a defendant for delivery of a controlled substance if they find that the defendant attempted to deliver a controlled substance. Accordingly, under the categorical approach, a conviction for delivery of a controlled substance under Mich. Comp. Laws § 333.7401 is a conviction for attempted delivery and thus not a controlled substance offense under the guidelines.

Because Mr. Morton's convictions under 21 U.S.C. § 841 and Mich. Comp. Law § 333.7401 are not controlled substance offenses, his base offense level is 14. With his criminal history category of V, his guideline range is 33 to 41 months.

### c. Support for Downward Variance

In the event that the Court finds that Mr. Morton is a career offender, he believes that a downward variance is warranted. Based upon the career offender classification, Mr. Morton's offense level is increased from 14 to 34 and his criminal history category is increased from V to VI. If Mr. Morton were not a career offender, his guideline range would be 33 to 41 months based upon an offense level of 14 and criminal history category

13

of V.  The career offender designation increases his guideline range by more than 790% on both the high and the low ends.  He believes that this is a disproportionate increase in his guideline range and that the advisory guideline range does not represent his unique circumstances.  Mr. Morton was convicted of possessing a relatively low quantity of heroin (10.603 grams).  (ECF No. 52, PSR ¶ 17.)  He did not resist arrest when confronted by police.  He intends to be law abiding in the future.

### (5)  Any pertinent policy statement

Mr. Morton is unaware of any pertinent policy statements that apply to his situation.

### (6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

Mr. Morton is the only defendant in this case.

## Conclusion

Jeremy Darnell Morton prays this Honorable Court sentence him sufficiently, but not greater than necessary, to achieve the goals of sentencing.  He thanks the Court for its time in considering his circumstances and this case.

Respectfully submitted,

SHARON A. TUREK
Federal Public Defender

Dated: December 3, 2019	/s/ Sean R. Tilton
SEAN R. TILTON
Assistant Federal Public Defender
50 Louis, NW, Suite 300
Grand Rapids, MI  49503
(616) 742-7420